UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| BILLY CASPER GOLF MANAGEMENT, INC., | Case No. 1:20-cv-00168-CMH-MSN |
| Plaintiff, | |
| v. | |
| SHIRLEY ANN CASPER, TRUSTEE, THE SHIRLEY ANN CASPER FAMILY TRUST and SHIRLEY ANN CASPER, PERSONAL REPRESENTATIVE, THE ESTATE OF WILLIAM EARL CASPER JR., | |
| Defendants. | |

**<u>MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COMPLAINT OF BILLY CASPER GOLF MANAGEMENT, INC. ON THE GROUND OF LACK OF PERSONAL JURISDICTION [Rule 12(b)(2)]</u>**

# TABLE OF CONTENTS

Page

MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COMPLAINT OF BILLY CASPER GOLF MANAGEMENT, INC. ON THE GROUND OF LACK OF PERSONAL JURISDICTION [RULE 12(B)(2)...................1

I.     INTRODUCTION AND SUMMARY OF ARGUMENT .............................................1

II.    FACTUAL BACKGROUND ...........................................................................................3

III.   STANDARD OF REVIEW ..............................................................................................5

       A.     RULE 12(B)(2) MOTION. .....................................................................................5

IV.    ARGUMENT ....................................................................................................................6

       A.     THE CONSTITUTIONAL PARAMETERS OF VIRGINIA'S LONG-ARM STATUTE..............................................................................................6

       B.     THE VIRGINIA LONG-ARM STATUTE REQUIRES THAT A TRUSTEE HAVE ITS OWN INDEPENDENT MINIMUM CONTACTS WITH THE COMMONWEALTH. ..........................................................................7

       C.     THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE THE COURT LACKS PERSONAL JURISDICTION OVER MRS. CASPER..........8

              1.     Mrs. Casper Is Not Subject to General Jurisdiction in Virginia. ..............8

              2.     Mrs. Casper Is Not Subject to Specific Jurisdiction in Virginia..............8

                     a.     The Virginia Long-Arm Statute Does Not Reach Mrs. Casper's Conduct. .........................................................................9

                     b.     Even if the Long-Arm Statute Reaches Mrs. Casper's Conduct, the Court Cannot Constitutionally Exercise Jurisdiction over Mrs. Casper. ...................................................16

V.     CONCLUSION................................................................................................................19

i

# TABLE OF AUTHORITIES

Page

**Cases**

AESP, Inc. v. Signamax, LLC, 29 F. Supp. 3d 683 (E.D. Va. 2014) ........................................... 9

Allied Professionals Ins. Co. v. Harmon, 2017 WL 5634861 (C.D. Cal. Mar. 7, 2017) ............ 15

ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707 (4th Cir. 2002) ........... 6, 7, 8, 12

Bay Tobacco, LLC v. Bell Quality Tobacco Prod., LLC, 261 F. Supp. 2d 483 (E.D. Va. 2003) ...................................................................................................................................... 10

Brillhart v. Excess Insurance Co. of America, 316 U.S. 491 (1942) ........................................... 2

Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985) ............................................................... 7

Chicago Insurance Co. v. Lammers, 2006 WL 5085250 (M.D. Fla. Oct. 31, 2006) ................... 15

City of Richmond, Va. v. Madison Mgmt. Grp., Inc., 918 F.2d 438 (4th Cir. 1990) ................. 16

Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976) ................... 2

Combs v. Dickenson-Wise Med. Grp., 233 Va. 177, 355 S.E.2d 553 (1987) .............................. 7

Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273 (4th Cir. 2009) ........................... 7, 18

Cooper Materials Handling, Inc.  v. Tegeler, No. 1:14-cv-956, 2014 WL 4748915 (E.D. Va. Sept. 24, 2014) ................................................................................................................ 10

Covenant Trust Co. v. Guardianship of Ihrman, 45 So. 3d 499 (Fla. 4th DCA 2010) ................. 8

Crawford Harbor Assocs. v. Blake Const. Co., 661 F. Supp. 880 (E.D. Va. 1987) .................... 16

Crosson v. Conlee, 745 F.2d 896 (4th Cir. 1984) ................................................................. 14, 16

D'Addario v. Geller, 264 F. Supp. 2d 367 (E.D. Va. 2003) ....................................................... 10

Dollar Tree Stores, Inc. v. Mountain Pacific Realty, LLC, 80 Va. Cir. 206, 2013 WL 8216346 (Chesapeake Jan. 29, 2013) ........................................................................... 10, 12

English & Smith v. Metzger, 901 F.2d 36, 38 (4th Cir. 1990) ................................................... 12

Equitable Trust Co. v. Bratwursthaus Management Corp., 514 F.2d 565 (4th Cir. 1975) .......... 11

ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617 (4th Cir. 1997) ............................................... 7

Fellows v. Colburn, 162 N.H. 685, 692, 34 A.3d 552 (2011) ...................................................... 8

First American Bank of Virginia v. Reilly, 563 N.E.2d 142 (Ind. Ct. App. 1990) ....................... 7

First American First, Inc. v. National Asso. of Bank Women, 802 F.2d 1511 (4th

Cir.Va.1986) ................................................................................................................. 10

Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915 (2011) .......................... 6, 7, 8

Hanson v. Denckla, 357 U.S. 235 (1958) ................................................................................ 10

Hawkins v. i-TV Digitalis Tavkozlesi zrt., 935 F.3d 211 (4th Cir. 2019) .................................... 6

Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408 (1984) .................................. 6

Iino v. Spalter, 192 Conn. App. 421, (2019).............................................................................. 14

Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement, 326 U.S. 310 (1945).......................................................................................................................... 2, 15

Moore Loans, Inc. v. B.E. Hardin Enterprises, Inc., 4 Va. Cir. 360 (City of Richmond, 1985).................................................................................................................................... 11

Noland Co. v. Aden, 1 Va. Cir.201 (City of Roanoke, 1980)...................................................... 11

Perdue Foods LLC v. BRF S.A., 814 F.3d 185 (4th Cir. 2016) ..................................................... 7

Purdue Research Found. v. Sanofi-Synthelabo, S.A., 338 F.3d 773 (7th Cir. 2003) ................. 15

Richard v. Ivy Grp. Int'l, Inc., No. 3:10-cv-851, 2011 WL 1814929 (E.D. Va. May 11, 2011).................................................................................................................................... 10

Rose v. Firstar Bank, 819 A.2d 1247 (R.I. 2003) ........................................................................ 8

Sneha Media & Entm't, LLC v. Associated Broad. Co. P Ltd., 911 F.3d 192 (4th Cir. 2018)................................................................................................................................ 6, 17

Stella Maris Insurance Co. v. Catholic Health East, 2010 WL 3522106 (E.D. Pa. Sept. 8, 2010).................................................................................................................................... 15

Stover v. O'Connell Associates, Inc., 84 F.3d 132 (4th Cir. 1996)............................................. 12

Thousand Oaks Barrel Co., LLC v. Deep S. Barrels LLC, 241 F. Supp. 3d 708 (E.D. Va. 2017)...................................................................................................................................... 9

Tire Eng'g v. Shandong Linglong Rubber Co., 682 F.3d 292 (4th Cir. 2012)............... 6, 8, 9, 17

Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553 (4th Cir. 2014) ................................. 6, 9

Veirs v. Mounts, 466 F. Supp. 187 (E.D. Va. 1979).................................................................... 12

World-Wide Volkswagen Corporation v. Woodson, 444 U.S. 286 (1980)................................. 10

Young v. New Haven Advocate, 2002, 315 F.3d 256, certiorari denied, 538 U.S. 1035.............. 6

Zaletel v. Prisma Labs, Inc., 226 F. Supp. 3d 599 (E.D. Va. 2016) .............................................. 9

**Statutes**

Virginia Code § 8.01-328.1(A)(1) ................................................................ 3

Virginia Code § 8.01-328.1(A)(2) ................................................................ 3

Virginia Code Ann. § 8.01-328............................................................. 7, 9

**Other Authorities**

76 Am. Jur. 2d Trusts § 306 (Nov. 2019 Update)......................................... 8

Restatement (Second) of Conflict of Laws § 358 ...................................... 14

**Rules**

Federal Rule of Civil Procedure Section 12(b)(2) .................................... 1, 5

Federal Rule of Civil Procedure Section 12(b)(6) ................................. 2, 5, 6

**Constitutional Provisions**

United States Constitution, Fourteenth Amendment ................................. 2, 6

1783258.1 - CASPER.BILLYCASPERGOLF

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
COMPLAINT OF BILLY CASPER GOLF MANAGEMENT, INC. ON THE GROUND
OF LACK OF PERSONAL JURISDICTION [RULE 12(B)(2)**

Defendant Shirley Casper, as Trustee of the Shirley Ann Casper Family Trust and

incorrectly sued as the personal representative of the Estate of William Earl Casper, Jr.

(hereinafter "Mrs. Casper" or "Defendant"), by counsel appearing specially without consenting

to personal jurisdiction of the Court and pursuant to Federal Rule of Civil Procedure Section

12(b)(2), hereby moves to dismiss the complaint of Plaintiff Billy Casper Golf Management, Inc.

("BCG") on the ground the Courts of the Commonwealth Virginia, including this Court, lacks

personal jurisdiction over her.[1]

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

This is a contract dispute between the 85-year old widow of golfing legend Billy Casper

and BCG over the parties' rights and obligations under a 2003 Agreement ("Agreement")

between Mr. Casper and BCG, pursuant to which Mr. Casper agreed to let BCG use his name

and likeness for its golf course management business.  BCG "secretly" filed this preemptive

declaratory relief action against Mrs. Casper in the Circuit Court of Fairfax County of the

Commonwealth of Virginia nearly four months before it ever told her of its existence or served it

on her.  (August Decl., ¶ 3.)  BCG only did so after she first effected service of a lawsuit she

filed against BCG in the Southern District of California (the "California Action"), where Mr.

Casper signed the Agreement, where BCG pays the money to Mrs. Casper as set forth in the

---

[1] The Fairfax County Complaint (ECF 1-3 at pages 2 through 14) by Billy Casper Golf Management, Inc. ("BCG") was originally filed in the Circuit Court for Fairfax County (Virginia) and was removed to this court on February 18, 2020 (ECF 1).  For the convenience of the Court, a copy of the Fairfax County Complaint is attached as Exhibit A to the Declaration of Andrew A. August in Support of Motion to Dismiss for Lack of Personal Jurisdiction Under Rule 12(b)(2) submitted herewith ("August Decl.").  Although the Fairfax County Complaint names Mrs. Casper as Trustee of her Trust and as the "Personal Representative, the Estate of William Earl Casper, Jr.," there was never any such legally cognizable estate (i.e., there was never a probate filed in any court of law).  Mrs. Casper's rights under the Agreement at issue in this case transferred to her by operation of community property law of the State of Utah, the domicile of both Mr. and Mrs. Casper at the time of Mr. Casper's death in February 2015.  (See Declaration of Shirley Ann Casper, Trustee, in Support of Motion to Dismiss Complaint pursuant to Fed. Rule Civ. Pro 12(b)(2), ("Casper Decl.") at ¶ 3.)

Agreement and where BCG manages golf courses.[2]  (See August Decl., Ex. B (the California Complaint) and Ex. D (the Agreement).)  BCG has consented to jurisdiction in the California Action and has filed a motion to dismiss the California Action under the Brillhart and Colorado River[3] abstention doctrines ("Abstention Motion").  (See August Decl., Ex. G (Memorandum of Points and Authorities in support of Abstention Motion) and Ex. H (Morris Affidavit in support of Abstention Motion).)

The Due Process Clause of the Fourteenth Amendment requires that a defendant have certain minimum contacts with the forum state before a court can exercise judicial power over the defendant.  Those minimum contacts are utterly lacking here.

BCG has argued in the California Action that jurisdiction here is proper based on several phone calls and emails/texts between Mrs. Casper and BCG executives in addition to her November and December 2019 requests for advances of the payments due her under the Agreement.  (August Decl., Ex. G, p. 11:8-15; Ex. H, ¶ 13.)  These "contacts," coupled with the fact that that BCG sends Mrs. Casper her money under the Agreement to her bank in California from its bank in Virginia, are literally the sole contacts between Mrs. Casper and the Commonwealth.  Invoking the jurisdiction of this Court based on these random, attenuated, fortuitous but miniscule communications would be precisely the result that "offend[s] traditional notions of fair play and substantial justice" under the Supreme Court's seminal case, Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945).

BCG's attempt to bootstrap Mr. Casper's long-ago contacts into personal jurisdiction over Mrs. Casper fails because the defendant Trust, which BCG must establish has its own minimum contacts with Virginia (through Mrs. Casper, its sole Trustee), was formed in 2018

---

[2] Shirley Ann Casper v. Billy Casper Golf Management, Inc., U.S. District Court, Southern District of California, Case No. 1:20-cv-00125-CAB-LL, filed January 17, 2020.  (See August Decl., Ex. B.)

[3] Brillhart v. Excess Insurance Co. of America, 316 U.S. 491 (1942); Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976)

under the laws of Utah.  The Trust has no employees or officers in Virginia and it owns no property in Virginia.  The last time Mrs. Casper came to Virginia was to watch her husband play in a PGA tour event – 40 years ago.

Simply put, the Court does not have personal jurisdiction over Mrs. Casper under either Virginia Code § 8.01-328.1(A)(1) or (2) (Virginia's "long-arm statute").  The Complaint should, therefore, be dismissed pursuant to Rule 12(b)(2).

## II.    FACTUAL BACKGROUND

The substantive facts of the case are set forth in detail in Mrs. Casper's complaint filed in the California Action and in BCG's Abstention Motion.  (August Decl., Ex. B.)  The factual discussion here, therefore, will focus primarily on the facts demonstrating there is no basis for this Court to exercise personal jurisdiction over Mrs. Casper under Virginia's long-arm statute.

Billy Casper is one of the most recognizable names in the history of golf.  As a result of his fame, Casper's name and likeness became very valuable.  Mr. Casper, however, was not a sophisticated businessman.  Over the years, Robert Morris, BCG's co-founder and Vice Chairman, became Casper's close friend, confidant, business partner and sports agent.  It was Morris who, in 1989, convinced Casper to use his valuable name to start the eponymous Billy Casper Golf Management along with Peter Hill.  (Mr. Hill is touted by BCG on its website as being the "6th Most Powerful Person in Golf" according to Golf Inc. Magazine.)  Since 1989, BCG has grown to manage nearly 150 golf courses in 29 states.

Prior to November 2003, Morris raised with Mr. Casper the idea of using Casper's name and likeness ("Casper Endorsement") to promote BCG.  These conversations occurred while Casper resided in Chula Vista, California (San Diego County) and culminated in the Agreement which Mr. Morris sent to Mr. Casper.  Although the Agreement says it is made and entered into April 1, 2003, it was signed by Mr. Casper at his home in Chula Vista, California on November 14, 2003.  Four days later Morris signed the Agreement for BCG.  (Casper Decl., ¶ 6.) Beyond the terms of the Agreement that will inform the substantive dispute, the Agreement contains several provisions directly relevant to this motion.

Sections 6 and 7 of the Agreement set forth the compensation schedule and mechanism by which Mr. Casper, Mrs. Casper, their heirs and assigns were to be paid during the "contract period" and following his death.  Although these sections are confusing, poorly and ambiguously written, the Agreement compensated Mr. Casper in two separate and distinct ways:

First, through a fixed annual amount for BCG's use of the Mr. Casper's endorsement rights (the "Passive Compensation").  As to this component, section 7 expressly provides that if Mrs. Casper survived Mr. Casper's passing, BCG was to pay the money directly to her in Chula Vista, California.  This section required no performance on the part of either Mr. or Mrs. Casper in Virginia as a condition to payment.  (Casper Decl., ¶¶ 3, 4.)

Second, BCG agreed to pay an additional annual guaranteed amount based on Mr. Casper's personal appearances and promotional activities on behalf of BCG or its affiliates.  Although BCG was located in Virginia, the Agreement does not require the Caspers to come to Virginia for personal appearances or otherwise.[4]  In fact, other than to watch Mr. Casper play in a golf tournament or two in the 1980s, Mrs. Casper has never been to Virginia.  Mr. Casper's last trip to Virginia predated the March 31, 2013 express expiration of the Agreement.[5]  (Casper Decl., ¶ 4.)

Section 9 requires BCG to send payments under the Agreement to the Casper's bank account Chula Vista, California.  Although formal notices under the Agreement were to be sent by the parties to Chula Vista and Vienna, Virginia, respectively, there are no known such notices sent by Mr. or Mrs. Casper to BCG or vice versa.

Mr. Casper passed away on February 7, 2015 in Springville, Utah.  Because Utah is a community property state, all of Mr. Casper's community assets passed to Mrs. Casper by

---

[4] BCG knew how to designate required appearances by Mr. Casper when it wanted to – it required him to attend the annual BCD dinner for the PGA show in Orlando, Florida.

[5] Although any renewal or extension of the contract period had to be in writing, BCG failed to do this.  BCG argues this is not important because the Caspers continued receiving the money after the contract expired and thus it automatically continued for another 10 years.  This is the core of the substantive dispute.

operation of law.  There was no probated estate and thus there was no assignment of the Agreement.[6]  Rather, as provided in section 7, BCG continued making payments to Mrs. Casper directly at the bank in Chula Vista, California.  In February 2018, Mrs. Casper had her lawyer create the defendant Shirley Ann Casper Family Trust.  She is the sole trustee.  (Casper Decl., ¶ 4.)

BCG continues to use the Casper Endorsement in virtually every aspect of its sales, marketing and operations.  It operates several golf courses in California - hence BCG's inability to challenge the jurisdiction of the California federal court.  Mrs. Casper has never communicated with BCG about its business operations.  Indeed, the extent of Mrs. Casper's communications with BCG's executives about "business" are a few text messages she sent Mr. Hill about BCG possibly purchasing from her additional Billy Casper memorabilia (to raise money for herself) and asking a couple of times for an advance on the monthly payments that BCG purported to make pursuant to the Agreement.  (Casper Decl., ¶¶ 8, 9.)  As discussed in detail below, the paucity of any contacts between Mrs. Casper and the Commonwealth raises serious ethical questions about BCG's "secret" Fairfax County Circuit Court filing and constitutionally mandates dismissal of this action.

### III.   STANDARD OF REVIEW

**A.    RULE 12(B)(2) MOTION.**

When personal jurisdiction is addressed under Rule 12(b)(2) without an evidentiary hearing, the party asserting jurisdiction has the burden of establishing a *prima facie* case of jurisdiction.  This "*prima facie* case" analysis resembles the plausibility inquiry governing motions to dismiss for failure to state a claim under Rule 12(b)(6).  That is, the district court must determine whether the facts proffered by the party asserting jurisdiction—assuming they

---

[6] In the California Federal Action, it is mistakenly alleged that there was an estate and that Mrs. Casper is its executrix.  It is also alleged that a Trademark obtained by Mrs. Casper's son was assigned to Mr. Casper's "estate" and then the "estate" assigned it to Mrs. Casper.  (August Decl., Ex. B at ¶¶ 4, 9 and 37.)  These allegations were made in error.  Mrs. Casper's estate lawyer has provided the correct facts and Mrs. Casper will be filing an amended complaint under Fed. Rule Civ. Pro 15(a) that will correct the erroneous allegations.  (See August Decl. at ¶ 5.)

are true—make out a case of personal jurisdiction over the party challenging jurisdiction.  Sneha Media & Entm't, LLC v. Associated Broad. Co. P Ltd., 911 F.3d 192, 196–97 (4th Cir. 2018).  Unlike Rule 12(b)(6), the court may also consider affidavits submitted by both parties, although it must resolve all factual disputes and draw all reasonable inferences in favor of the party asserting jurisdiction.  Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 560 (4th Cir. 2014).  The existence of a *prima facie* case of jurisdiction is a question of law.  Hawkins v. i-TV Digitalis Tavkozlesi zrt., 935 F.3d 211, 226–27 (4th Cir. 2019).

## IV.   ARGUMENT

### A.   THE CONSTITUTIONAL PARAMETERS OF VIRGINIA'S LONG-ARM STATUTE.

Because Virginia's long-arm statute extends personal jurisdiction to the extent permitted by the Due Process Clause of the Fourteenth Amendment, statutory inquiry necessarily merges with constitutional inquiry, and the two inquiries essentially become one.  Young v. New Haven Advocate, 2002, 315 F.3d 256, certiorari denied, 538 U.S. 1035.  There are two avenues by which a plaintiff may constitutionally establish personal jurisdiction over a defendant consistent with the Due Process Clause – general and specific jurisdiction.

General jurisdiction requires that the plaintiff demonstrate the defendant's "continuous and systematic contact" with the forum state.  See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414–16 (1984).  General jurisdiction "requires a more demanding showing of 'continuous and systematic' activities in the forum state."  Tire Eng'g v. Shandong Linglong Rubber Co., 682 F.3d 292, 301 (4th Cir. 2012) (citing ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 711 (4th Cir. 2002).  A court has general jurisdiction over defendants only "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."  Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011).

In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of "issues deriving from, or connected with, the very controversy that establishes

jurisdiction." <u>Id.</u>  To establish specific jurisdiction the plaintiff must demonstrate that the defendant purposely established minimum contacts in the forum state such that it should reasonably anticipate being hauled into court there on a claim arising out of those contacts. <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 474 (1985).

To establish the minimum contacts necessary for this Court to exercise specific personal jurisdiction over Mrs. Casper, BCG bears the burden of demonstrating: (1) that Mrs. Casper purposefully availed herself of the privilege of conducting activities in Virginia; (2) that BCG's claims arose out of the activities that Mrs. Casper directed at Virginia; and (3) that the Court's exercise of personal jurisdiction over Mrs. Casper would be constitutionally reasonable.  <u>See Perdue Foods LLC v. BRF S.A.</u>, 814 F.3d 185, 189 (4th Cir. 2016) (citing <u>ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.</u>, <u>supra</u> at 712; <u>Consulting Eng'rs Corp. v. Geometric Ltd.</u>, 561 F.3d 273, 278 (4th Cir. 2009).  The defendant's contacts with the State "must have been so substantial that 'they amount to a surrogate for presence and thus render [Virginia's] exercise of sovereignty just.'"  <u>Id.</u> quoting <u>ESAB Grp., Inc. v. Centricut, Inc.</u>, 126 F.3d 617, 623 (4th Cir. 1997).

**B.      THE VIRGINIA LONG-ARM STATUTE REQUIRES THAT A TRUSTEE HAVE ITS OWN INDEPENDENT MINIMUM CONTACTS WITH THE COMMONWEALTH.**

In its Abstention Motion in the California Action, BCG tries to piggyback on Mr. Casper's long-ago contacts with Virginia.  (August Decl., Ex. G at pp. 28:16-29:2.)  But this strategic gambit is fatally flawed.  The term "person" as defined in Virginia's long-arm statute is all inclusive, sufficient to bring within ambit of statute every natural or fictitious entity, including trustees, capable of performing acts, such as transacting business, which are made the basis for exercise of personal jurisdiction over nonresident.  Va. Code Ann. § 8.01-328 (West).  <u>Combs v. Dickenson-Wise Med. Grp.</u>, 233 Va. 177, 355 S.E.2d 553 (1987).  A Trustee, as a person subject to the long-arm statute, however, must have his/her/its own independent minimum contacts and thus a nonresident trustee may not be called upon to defend in an action involving the trust unless it has "minimal contacts" with the state in which the suit is brought. <u>First American Bank of Virginia v. Reilly</u>, 563 N.E.2d 142 (Ind. Ct. App. 1990) (holding that specific personal

jurisdiction could not be established over a bank in Virginia which was trustee of an estate probated in Indiana because the bank/trustee lacked independent minimum contacts with Indiana).[7]  Thus, the Court must evaluate Mrs. Casper's contacts with the Commonwealth, not those of Mr. Casper.

**C.    THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE THE COURT LACKS PERSONAL JURISDICTION OVER MRS. CASPER.**

**1.    Mrs. Casper Is Not Subject to General Jurisdiction in Virginia.**

This Court may not properly exercise general personal jurisdiction over Mrs. Casper. The Trust was formed in Utah under Utah law.  Mrs. Casper is a resident and citizen of Utah. The Trust has no offices, employees or property in Virginia and has never transacted any business in Virginia.  Mrs. Casper was never a Virginia citizen and has not been to Virginia in the past 40 years.  (Casper Decl., ¶ 4.)  There is simply no way BCG can demonstrate the demanding showing of "continuous and systematic" activities by Mrs. Casper as Trustee in the forum state.  Tire Eng'g v. Shandong Linglong Rubber Co., supra; ALS Scan, Inc., supra.  Nor can it possibly characterize Mrs. Casper as "essentially at home" in Virginia.  Goodyear Dunlop Tires Operations, S.A., supra. at 919.  Mrs. Casper is not subject to general jurisdiction in Virginia.

**2.    Mrs. Casper Is Not Subject to Specific Jurisdiction in Virginia.**

Nor may the Court properly exercise personal jurisdiction over Mrs. Casper under a theory of specific jurisdiction.  "Under Fourth Circuit law, resolution of a personal jurisdiction challenge involves a two-step inquiry."  Zaletel v. Prisma Labs, Inc., 226 F. Supp. 3d 599, 605

---

[7] Mrs. Casper is not aware of a case from this jurisdiction that expressly so holds.  However, this rule has been applied by other courts facing the question of constitutional *in personam* jurisdiction over nonresident trustees who lack minimum contacts with the forum state: Covenant Trust Co. v. Guardianship of Ihrman, 45 So. 3d 499 (Fla. 4th DCA 2010); Rose v. Firstar Bank, 819 A.2d 1247, 1251 (R.I. 2003); Fellows v. Colburn, 162 N.H. 685, 692, 34 A.3d 552, 559 (2011). See discussion generally at 76 Am. Jur. 2d Trusts § 306 (Nov. 2019 Update)

(E.D. Va. 2016) (citing Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 558 (4th Cir. 2014)).  "The first step is to determine whether Virginia's long-arm statute, Va. Code § 8.01–328.1, by its terms, reaches defendant's conduct."  Id.  "When personal jurisdiction 'is based solely upon [the long-arm statute], only a cause of action arising from acts enumerated in [this statute] may be asserted' against the defendant." Thousand Oaks Barrel Co., LLC v. Deep S. Barrels LLC, 241 F. Supp. 3d 708, 714 (E.D. Va. 2017) (quoting Va. Code Ann. § 8.01–328.1(C)).  "If the long-arm statute does not reach defendant's conduct, the inquiry ends; there is no personal jurisdiction over defendant." Zaletel, 226 F. Supp. 3d at 605.

Only if BCG can establish that the Virginia long-arm statute reaches Mrs. Casper's conduct, then does the Court analyze whether exercising jurisdiction over Mrs. Casper comports with due process.  See AESP, Inc. v. Signamax, LLC, 29 F. Supp. 3d 683, 688 (E.D. Va. 2014).  For that analysis, the Fourth Circuit generally considers three factors: (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims arise out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable.  Tire Eng'g v. Shandong Linglong Rubber Co., 682 F.3d at 301-02.

### a.   The Virginia Long-Arm Statute Does Not Reach Mrs. Casper's Conduct.

The Virginia Long-Arm Statute provides that a "court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's: . . . Transacting any business in this Commonwealth; . . . [or] Contracting to supply services or things in this Commonwealth . . ." among other conduct.  Va. Code Ann. § 8.01328.1(A)(1) and (2).  These are the only bases for jurisdiction alleged in BCG's Complaint.  (August Decl.; Ex. A.)  Under no rational interpretation of these sections, however, did Mrs. Casper "transact business" with BCG *in* Virginia.  Nor did Mrs. Casper contract to supply services in Virginia.  Mrs. Casper simply received payments in California as required by the Agreement.  Thus, the long-arm statute does not reach Mrs. Casper's conduct underlying BCG's alleged causes of

action.  (Casper Decl., ¶ 4.)

BCG will correctly urge that "Virginia is a 'single act' state, such that a single act of transacting business can permit a court to exercise personal jurisdiction." Richard v. Ivy Grp. Int'l, Inc., No. 3:10-cv-851, 2011 WL 1814929, at *3 (E.D. Va. May 11, 2011) (quoting D'Addario v. Geller, 264 F. Supp. 2d 367, 379 (E.D. Va. 2003)).  "However, not just any single act will satisfy § 8.01–328.1(A)(1)." Id.  "Rather, a single act must be sufficiently significant to supply a basis for the court's jurisdiction." Id.  The "single contact by a nonresident defendant [must be] sufficiently 'purposeful' in its aim at, and sufficiently egregious in its impact upon, a forum state's legitimate interests, [to] support a constitutional exercise of specific jurisdiction in respect of a claim arising from that very contact." First American First, Inc. v. National Asso. of Bank Women, 802 F.2d 1511, 1516 (4th Cir.Va.1986).

Where the plaintiff-defendant relationship arose from a contract, "courts look at: '(i) where any contracting occurred, and where the negotiations took place; (ii) who initiated the contact; (iii) the extent of the communications, both telephonic and written, between the parties; and (iv) where the obligations of the parties to the contract were to be performed.'" Cooper Materials Handling, Inc.  v. Tegeler, No. 1:14-cv-956, 2014 WL 4748915, at *4 (E.D. Va. Sept. 24, 2014) (quoting Dollar Tree Stores, Inc. v. Mountain Pacific Realty, LLC, 80 Va. Cir. 206, 2013 WL 8216346, at *2 (Chesapeake Jan. 29, 2013)); see also Bay Tobacco, LLC v. Bell Quality Tobacco Prod., LLC, 261 F. Supp. 2d 483, 493 (E.D. Va. 2003) (same factors). "[T]he mere 'unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." World-Wide Volkswagen Corporation v. Woodson, 444 U.S. 286, 298 (1980) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

Here, there were *no negotiations* between BCG and Mrs. Casper.  The Agreement was presented to and signed by Mr. Casper in November 2003 in California after he and Morris discussed by phone doing some type of licensing deal.  BCG alleges the Agreement was "renewed" in 2013.  But the Caspers were in Utah at the time and BCG never sent a written

renewal notice to Mr. or Mrs. Casper, as required by section 19 of the Agreement.  Rather, BCG contends that the 10-year renewal took place when Mr. Casper accepted the first post-expiration payment in April 2003.  Mr. Casper never assigned the Agreement to his "estate" because there was no such estate.  Nor is there a place of performance specified for Mr. Casper (because BCG manages courses all over the country, this is understandable).  At no time after 2013 did Mr. Casper travel to Virginia.  (Casper Decl., ¶¶ 6, 11.)

As for Mrs. Casper's Trust - which can only act through her as its Trustee - it was formed in 2018 in Utah, under Utah law.  The only time Mrs. Casper met in person with anyone from BCG regarding the Agreement or payments thereunder was in Utah in 2015 at Mr. Casper's funeral.  Mrs. Casper has no affirmative performance obligations under the Agreement.  (Casper Decl., ¶ 11.)

As for BCG's performance obligations, it had one – pay the money to the Casper's at their bank in Chula Vista, California (this never changed).  (See Agreement, Section 9, August Decl., Ex. D, p.3.)  Thus, the only place for BCG's performance of the Agreement is where payment is to be made – California, not Virginia.  To determine the "place of performance" for jurisdiction purposes, courts have looked where most of the contract obligations are to be performed.  See Equitable Trust Co. v. Bratwursthaus Management Corp., 514 F.2d 565, 567 (4th Cir. 1975).  Where a contract is silent as to the place where payment is to be made, the debtor is obligated to seek out his creditor and make payment at the creditor's residence or place of business.  Cf. Moore Loans, Inc. v. B.E. Hardin Enterprises, Inc., 4 Va. Cir. 360 (City of Richmond, 1985); and, Noland Co. v. Aden, 1 Va. Cir.201 (City of Roanoke, 1980) (applying the so-called "to pay" doctrine for the purpose of determining proper venue).

On a few occasions in 2018 and 2019, Mrs. Casper texted or emailed with BCG executives about attending a golf tournament hosted by BCG in Florida in March 2019 or about getting an advance on her monthly payments or purchasing some additional Billy Casper memorabilia.  These sporadic, attenuated and/or completely unrelated communications (to the Agreement) are grossly insufficient to establish that Mrs. Casper transacted business in Virginia

or contracted to supply services in Virginia for BCG.  (Casper Decl., ¶ 8.)

An out-of-state resident sending letters or calling a resident of Maryland did not constitute an act that conferred jurisdiction over the out-of-state defendant.  See Stover v. O'Connell Associates, Inc., 84 F.3d 132, 137 (4th Cir. 1996) (rejecting jurisdiction under Maryland's long-arm statute where the only contacts with Maryland were its occasional placement of telephonic orders for, and the consequent receipt of, investigation services from Maryland).  Sending emails or other electronic communication cannot by themselves serve as a basis for extending jurisdiction over an out-of-state defendant.  Rather, a state may, consistent with due process, exercise judicial power over a person outside of the state when that person (1) directs electronic activity into the state, (2) with the manifested intent of engaging in business or other interactions within the state, and (3) that activity creates, in a person within the state, a potential cause of action cognizable in the state's courts.  ALS Scan, Inc. v. Digital Serv. Consultants, Inc., supra.

If the dearth of Mrs. Casper's electronic communications with BCG were sufficient to establish personal jurisdiction given the telecommunications boon of the 21st Century, such a rule would eviscerate the protection of the Due Process Clause and subject a defendant to the jurisdiction of almost any state in the country based on a few emails and texts. Cf. Id; see also, Dollar Tree Stores, Inc., 2013 WL 8216346, (recognizing that while "[i]t is possible for an out-of-state entity to transact business *with* a Virginia corporation while not actually transacting any business *in* Virginia that is sufficiently substantial to invoke Va. Code § 8.01–328.1(A)(1)" "only a 'substantial' transaction will satisfy Virginia's long-arm statute," Id. at *2 quoting English & Smith v. Metzger, 901 F.2d 36, 38 (4th Cir. 1990) and that "[m]ere contract negotiations in Virginia . . . are not sufficient to support jurisdiction in Virginia." Id. at *3 citing Veirs v. Mounts, 466 F. Supp. 187, 191 (E.D. Va. 1979).

In light of BCG's Abstention Motion, Mrs. Casper anticipates BGG will attempt to bootstrap Mr. Casper's long-ago limited and sporadic contacts with Virginia into jurisdiction over Mrs. Casper.  (August Decl., Ex. G at pp. 26-28.)  This stratagem fails because it ignores

the law discussed above which confirms that in suing a trustee as a "person" subject to a state's long-arm statute, the plaintiff must demonstrate that the trustee has its own independent "minimum contacts" with the forum state.  Thus, a nonresident trustee may not be called upon to defend in an action involving the trust unless the trustee has "minimum contacts" with that state. It also fails because Mr. Casper's transaction with BCG in Virginia was not "substantial."

In its Abstention Motion, BCG argues that Mr. Casper purposely availed himself of Virginia's jurisdiction based on the below points, but fails to give the District Court in California the full context as follows:

- BCG contends that prior to the Agreement, Mr. Casper was a shareholder in BCG. BCG admits, however, that Mr. Casper sold his interest before the Agreement was entered into and that this dispute has nothing to do with his shareholder interest.

- BCG contends that the Agreement contains a choice of law clause.  However, the Agreement notably does not contain a forum selection clause.

- BCG contends that the Agreement calls for formal notices to be issued to BCG in Virginia.  But BCG ignores that Mr. Casper never issued any such notices and that notice to Mr. Casper was to be made *in California* (and that BCG never gave any such notices).

- BCG contends that the Agreement says Mr. Casper was "to make personal appearances, pose for autographs and otherwise assist BCG in BCG's promotional activities."  BCG ignores that nothing in the Agreement says those activities had to or did occur in Virginia (BCG operates golf courses all over the country).

- BCG contends that Mr. Casper traveled to BCG's Fairfax County office and to golf courses managed by BCG in Virginia.  However, BCG fails to offer any evidence of the frequency of these trips or any other details concerning when and where they occurred.  BCG also admits that Mr. Casper's communications relative to the negotiation and performance of the Agreement occurred while Mr.

Casper was *in California* (and later Utah).

BCG's conclusory statements (through Mr. Morris' Declaration) to the District Court in California do not suffice to establish either general or specific jurisdiction over Mr. Casper under the caselaw cited throughout this brief.

Recognizing the infirmity of their argument *vis a vis* Mr. Casper's contacts, BCG will likely renew its argument from its Abstention Motion that under Crosson v. Conlee, 745 F.2d 896 (4th Cir. 1984) that Mr. Casper's *de minimus* contacts are imputed to Mrs. Casper. This argument is constitutionally unavailing. In Crosson, the Court, relying on the Restatement (Second) of Conflict of Laws § 358 and the inclusion in the Virginia long-arm statute of an executor, held that an action may constitutionally be maintained against a duly appointed foreign executor or administrator upon a claim against the decedent when the local law of the forum authorizes suit in the state against the executor or administrator. See also, Iino v. Spalter, 192 Conn. App. 421, (2019) (holding, under Connecticut law, if the relevant long arm statute would have permitted the court to exercise jurisdiction over a decedent had he been living, the due process clause of the federal constitution is not offended by that statute also permitting the exercise of jurisdiction over the decedent's *executrix, who stands in the shoes of the decedent for purposes of the action*).[8]  Unlike these cases, Mrs. Casper is not being sued and cannot be sued as standing in the shoes of Mr. Casper *vis a vis* BCG or the Agreement.

She was never appointed executrix, administrator or trustee of Mr. Casper's trust or his assets. (Casper Decl., ¶ 2.)  Her entitlement to the payments under the Agreement after Mr. Casper's passing is based on her independent entitlement as an express third-party beneficiary under section 7 of the Agreement (or by virtue of succession under Utah's community property

---

[8] Significantly, the decedent in Crosson lived in Virginia most of his life, owned and operated a business in Virginia, entered into the subject contract in Virginia, breached the contract in Virginia but moved to Florida before he died. It was under these factual circumstances that the Court imputed jurisdiction over the decedent's appointed executor. Similarly, in Iino the action brought by the plaintiff could have been brought against the decedent for the tortious acts *he committed while in the forum state*. The action named the defendant, not because of any act or failure to act on her part, but because she is standing in the shoes of the decedent. Mr. Casper's "transactions" in Virginia were comparatively non-existent and BCG is not suing and cannot sue.

laws).  But no case has ever extended <u>International Shoe</u> and its progeny on such vacuous grounds as third-party beneficiary status.

Although there are no Fourth Circuit authorities on this point of law, district courts have uniformly concluded that a non-signatory does not purposefully avail himself of the forum state merely by attempting to collect under an insurance policy that is governed by the laws of the forum state or issued by an insurer based in that state.  In <u>Stella Maris Insurance Co. v. Catholic Health East</u>, 2010 WL 3522106, at *5 (E.D. Pa. Sept. 8, 2010), for example, the district court rejected the insurer's argument that a third-party beneficiary of an insurance contract purposefully availed himself of Pennsylvania merely because he was "claiming rights under [a] policy, which is governed by and construed in accordance with the law of the state of Pennsylvania." Similarly, in <u>Chicago Insurance Co. v. Lammers,</u> 2006 WL 5085250, at *2 (M.D. Fla. Oct. 31, 2006) the district court found the maxim that a third-party beneficiary "stand[s] in the shoes" of a contracting party inapposite in determining whether a third-party beneficiary had purposefully availed himself of the forum state.  Personal jurisdiction, the district court concluded, is a separate, individualized inquiry, so a plaintiff must demonstrate that each defendant purposefully availed himself of the forum through his own conduct. <u>Id</u>. <u>See also</u>, <u>Allied Professionals Ins. Co. v. Harmon</u>, 2017 WL 5634861, at *3 (C.D. Cal. Mar. 7, 2017).

Although Mr. Casper never assigned the Agreement to his non-existent estate (Casper Decl. ¶¶ 2, 3), even if he had, it would be unavailing to BCG.  In <u>Purdue Research Found. v. Sanofi-Synthelabo, S.A.</u>, 338 F.3d 773, 784 (7th Cir. 2003) the Seventh Circuit rejected the notion that the contacts of an assignor are automatically imputed to an assignee for purposes of personal jurisdiction.  Because personal jurisdiction requires "an individual assessment of a particular defendant's contacts with the forum state," the Seventh Circuit concluded that "a general rule that imputes the assignor's forum contacts to the assignee would, at least in some cases, violate the established norms of due process." <u>Id</u>. at 784.

Mrs. Casper is merely the Trustee of her own Trust created in 2018, long after Mr.

Casper passed away.  BCG has sued Mrs. Casper as Trustee of her own *inter-vivos* Trust.  At no time was she the executor, administrator or trustee of Mr. Casper's trust or estate.  (Casper Decl. ¶¶ 2, 4.)  And unlike the defendant in <u>Crosson</u>, at no time was Mrs. Casper ever appointed executor or administrator of Mr. Casper's estate, again because no such an estate was ever created.  (Casper Decl., ¶ 2; <u>see also</u> footnote 6 <u>supra</u>.)  Rather, Mrs. Casper succeeded to the benefits of the Agreement under Utah's community property laws and is an intended third-party beneficiary under the Agreement.  <u>Id.</u>  Simply put, it is not constitutionally permissible to force Mrs. Casper to defend this case based on an incorrect information and belief allegation.

If BCG wanted to ensure personal jurisdiction over the Caspers in Virginia, it had the complete power and opportunity to do so.  It could have requested a renewal of the Agreement in writing (as the Agreement required), made clear the contract was entered into in Virginia, included a forum selection clause and had both Caspers sign and return the renewed Agreement. Instead, BCG made the conscious decision to "let sleeping dogs lie" so that it could continue to pay a relative pittance to the Caspers.

We may also hear from BCG about <u>Crawford Harbor Assocs. v. Blake Const. Co.</u>, 661 F. Supp. 880 (E.D. Va. 1987) and <u>City of Richmond, Va. v. Madison Mgmt. Grp., Inc.</u>, 918 F.2d 438 (4th Cir. 1990), two cases BCG relies on in its Abstention Motion.  These cases, however, are even more unavailing.  Even the most cursory review of these cases reveals they have nothing whatsoever to do with the exercise of jurisdiction over either a nonresident trustee of his/her own *inter-vivos* trust (that never contracted within the forum state) or a spouse who inherits contractual benefits by means of community property laws of a foreign state.  Rather, they both involve complex, fact-specific considerations of corporate successor liability for tortious conduct in Virginia.  The fact BCG even cites these cases underscores its desperation to apply the long-arm statute where there is no basis to do so.

> **b.    Even if the Long-Arm Statute Reaches Mrs. Casper's Conduct, the Court Cannot Constitutionally Exercise Jurisdiction over Mrs. Casper.**

BCG also fails to satisfy the second prong of the personal jurisdiction test because Mrs.

Casper does not have the minimum contacts required for a Court in Virginia to constitutionally exercise jurisdiction over it.  "Fairness is the touchstone of the jurisdictional inquiry." Tire Eng'g & Distribution, LLC, supra at 301.  As set forth above, the Court looks to three factors for constitutional fairness: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims arise out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable." Id. at 302.  Taken together, the three factors demonstrate that the Court cannot constitutionally exercise jurisdiction over Mrs. Casper.

In determining whether a defendant has purposely availed itself of the privilege of conducting business in a state, the Fourth Circuit has identified numerous nonexclusive factors to be considered, such as (1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted.  Sneha Media & Entm't, LLC v. Associated Broad. Co. P Ltd., 911 F.3d 192, supra.

With the exception of a choice of law provision in the Agreement (no. 5, above), BCG cannot establish the existence of *any* of these other factors: Mrs. Casper did not (1) have any offices or employees in Virginia; (2) maintain any property in Virginia; (3) reach into the State to solicit or initiate business (other than one text message to see if BCG was interested in buying some of Mr. Casper's memorabilia – it advised her it was not); (4) deliberately engage in any business activities in the State, let alone "significant or long term" activities; (6) make any in-person contact in the State with anyone from BCG; (7) have any duties to perform in the State and (8) had no meaningful communications with BCG about the Agreement.

Presumably, BCG put its best evidence forward in in its Abstention Motion to dismiss the California Federal Action in arguing that the Virginia courts have jurisdiction over Mrs. Casper. This is BCG's best "evidence" of Mrs. Casper's contacts with Virginia:

> Aware that BCG was a Virginia entity, Mrs. Casper permitted BCG's use of Mr. Casper's name and likeness without objection for nearly five (5) years following Mr. Casper's death. Further, as admitted by Mrs. Casper's Complaint, Mrs. Casper continued to accept payments issued from Virginia by BCG, a Virginia entity. Ex. 2 at ¶ 11-12. Mrs. Casper also regularly communicated with BCG representatives located in Virginia. Among other communications, Mrs. Casper repeatedly requested advances on the amounts due under the Agreement or monthly payments by BCG before their due date. Ex. 2 at ¶ 13. Mrs. Casper therefore actively solicited BCG's payment of amounts from Virginia.

August Decl., Ex. G at pp 29-30.

BCG urges the California district court to adopt a Catch-22 jurisdictional analysis – if the nonresident defendant does nothing, remains silent and simply accepts payments from the forum state, minimum contacts are satisfied.  But if the nonresident defendant communicates to the plaintiff in the forum state about the contract, that too meets the constitutional standard.

Finally, it is not reasonable to force Mrs. Casper to defend this case in Virginia.  This third prong "permits a court to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself of the privilege of doing business there." Consulting Engineers Corp., supra at 279."  Such factors include: (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies." Id. (citations omitted). jurisdiction.

Mrs. Casper is 85 years old.  She cannot travel alone.  She spends a few months a year in San Diego surrounded by several friends and a couple of her children who live in the San Diego area.  She used to live there and is very at home in San Diego.  A trial in this Court will force her to spend money she does not have to stay in a hotel and pay for her support team to stay with her. The burden of forcing her to participate in a trial in Virginia would be extreme compared to the

"burden" on BCG's executives traveling to a forum in which they already do business.[9] (Casper Decl., ¶ 12.)

There is no unique interest Virginia has in this suit other than the choice of law provision. This is a straightforward breach of contract case and does not involve any unique Virginia state statute. Of course, federal courts sitting in diversity are regularly called on to decide cases applying the law of other jurisdictions. If a choice of law clause alone is outcome determinative, that would offend the traditional notions of fair play, substantial justice and purposeful availment, and all but eliminate the required constitutional analysis.

In this case, the fourth factor - the shared interest of the states in obtaining efficient resolution of disputes – favors dismissal because there is no dispute that California has personal jurisdiction over BCG. Finally, because this case involves a commercial contract dispute, the interests of the states in furthering substantive social policies are not implicated at all.

## V.   **CONCLUSION**

Under any constitutional standard, there is no basis for this court to exercise personal jurisdiction over Mrs. Casper. The Court should, therefore, grant this Motion to Dismiss under Rule 12(b)(2) and let the dispute proceed in the California Federal Action.

Dated: February 25, 2020                    RUBIN, WINSTON, DIERCKS, HARRIS & COOKE, L.L.P.


By:  ___/s/ Walter E. Diercks_____
      Walter E. Diercks (VA SBN 12709)
      RUBIN, WINSTON, DIERCKS, HARRIS &
      COOKE, L.L.P.
      1250 Connecticut Avenue, NW, Suite 700
      Washington, D.C. 20036
      Telephone:     (202) 861-0870
      Email:   wdiercks@rwdhc.com

---

[9] BCG has been a party to litigation in the following states: Colorado, Connecticut, Delaware, Florida, New Jersey, Ohio, Tennessee and Virginia.

Dated:  February 25, 2020       STEYER LOWENTHAL BOODROOKAS
ALVAREZ & SMITH LLP

By:    /s/ Andrew A. August
     Andrew A. August (CA SBN 112851)
     Kevin F. Rooney (CA SBN 184096)
     STEYER LOWENTHAL BOODROOKAS
     ALVAREZ & SMITH LLP
     235 Pine Street, 15th Floor
     San Francisco, California 94104
     Telephone:      (415) 421-3400
     Facsimile:      (415) 421-2234
     E-mail:      aaugust@steyerlaw.com
     krooney@steyerlaw.com

*Attorneys for Defendant Shirley Ann Casper*

20

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 25th day of February 2020, a true and correct copy of the foregoing was sent via first class mail to:

Charlie C.H. Lee (VSB 30410)
Matthew C. Long (VSB 84126)
MOORE & LEE, LLP
1751 Pinnacle Drive, Suite 110
McLean, VA 22102
Telephone: (703) 506-2050
Facsimile: (703) 506-2051
Email: c.lee@mooreandlee.com
Email: m.long@nooreandlee.com

*Counsel for Plaintiff,*
*Billy Casper Golf Management, Inc.*

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on February 25, 2020 at Alexandria, Virginia.

/s/Walter E. Diercks
Walter E. Diercks (VA SBN 12709)
RUBIN, WINSTON, DIERCKS, HARRIS &
   COOKE, LLP
1250 Connecticut Avenue, NW'
Suite 700
Telephone:  (202) 861-0870
E-mail: wdiercks@rwdhc.com